United States District Court
Southern District of Texas

**ENTERED**

May 27, 2016

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STEVEN CHARLOT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-15-3028 |
| | § | |
| CITY OF HOUSTON, et al., | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM OPINION

Pending before the court[1] are Defendants Frank Medina
("Officer Medina") and Eduardo Martinez' ("Officer Martinez")
Motion to Dismiss (Doc. 8); Defendants Curtis Ford ("Sergeant
Ford") and Traci Seals' ("Sergeant Seals") Motion to Dismiss (Doc.
13).  The court has considered the motions, the responses, all
other relevant filings, and the applicable law.  For the reasons
set forth below, the court **GRANTS** both motions.

### I.  Case Background

Plaintiff filed this civil-rights action against multiple
defendants, alleging violations of his constitutional rights in
connection with a body-cavity search performed while Plaintiff was
in custody.

### A.  Factual Background

On April 20, 2015, Officer Medina, an undercover police

---

[1]      The parties consented to proceed before the undersigned magistrate
judge for all proceedings, including trial and final judgment, pursuant to 28
U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  See Docs. 18, 19, 21,
24.

officer for the Houston Police Department ("HPD"), allegedly received a tip about Plaintiff's involvement in illegal drug activity.[2]  The tip led Officer Medina to a gas station on Elgin St., where he observed what appeared to Officer Medina to be a narcotics transaction conducted by Plaintiff from an automobile that matched the description given by the tipster.[3]  When Plaintiff drove away from the gas station, Officer Medina followed him.[4]

A few blocks later, Officer Medina allegedly observed Plaintiff's failure to signal a turn and directed Defendants L.D. Smith ("Officer Smith") and M.J. Glover ("Officer Glover"), HPD police officers traveling in a marked vehicle, to stop Plaintiff for the infraction.[5]  Officers Smith and Glover asked Plaintiff for permission to search his vehicle, to which he allegedly consented.[6] The search allegedly returned prescription pills that were not in Plaintiff's name.[7]

The officers summoned an HPD K-9 officer to the scene, and the dog alerted to the front-middle console area of Plaintiff's automobile, but no additional drugs were found.[8]  Officers Smith

---

[2]     Doc. 1, Compl. p. 4.

[3]     Id. pp. 4-5.

[4]     Id. p. 5.

[5]     Id.

[6]     Id.

[7]     Id.

[8]     Id.

and Glover arrested Plaintiff and transported him to HPD's central jail facility.[9]

Officer Smith performed a search incident to arrest, felt something between Plaintiff's buttocks, and requested a strip search.[10] A jail officer notified Sergeant Ford of the request, and then the jail officer conducted "a quick search" of Plaintiff.[11] The jail officer indicated that he also felt something between Plaintiff's buttocks.[12] After briefing Sergeant Ford, Officer Smith asked Sergeants Ford and Seals to approve a strip search.[13]

Sergeant Ford communicated with the lieutenant in charge, after which Sergeant Ford informed Officer Smith that "a strip search WOULD NOT be performed" and instructed Officer Smith to convince Plaintiff to remove the object himself.[14] Upon Plaintiff's denial that there was anything to be removed, Sergeant Ford instructed Officer Smith to transport Plaintiff to a hospital for a body-cavity search.[15] Officer Smith clarified that he was not requesting a body-cavity search, but Sergeant Ford repeated his

---

[9] See id.

[10] Id.

[11] Id. pp. 5-6.

[12] Id. p. 6.

[13] Id.

[14] Id.

[15] Id.

denial of permission to have a strip search performed at the jail.[16]

Officers Smith and Glover transported Plaintiff to one hospital that refused to perform a body-cavity search and then to Ben Taub Hospital, which agreed on the condition that a search warrant be obtained.[17]

Officers Medina and Martinez prepared the warrant, secured a judge's signature, and provided it to a doctor at the hospital.[18] The doctor performed a rectal exam on Plaintiff, who remained handcuffed during the search.  The doctor reported that he found nothing in Plaintiff's rectum.[19]

**B.   Procedural Background**

On October 14, 2015, Plaintiff filed this action, naming the City of Houston, eight police officers (including two unnamed officers), and the chief of police as defendants.[20]  Plaintiff alleged that "[t]he cavity search was not performed according to the search and seizure laws of the State of Texas or the United States of America because the force was too excessive given the circumstances" and suggested that a strip search would have been

---

[16]   See id.

[17]   Id. pp. 6-7.

[18]   Id. p. 7.

[19]   Id.

[20]   See id. pp. 1, 3.

4

sufficient.[21]

Stating two causes of action, Plaintiff alleged that Officers Medina and Martinez and Sergeants Ford and Seals, among other officers, violated Plaintiff's "right to be secure in [his] person against unreasonable seizure of his person, in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States" and that Chief McClelland and Defendant City of Houston were liable for those violations because they were aware of a pattern of excessive force among HPD officers and failed to "instruct, supervise, control, and discipline" the officers.[22]

Defendant City of Houston filed an answer on November 4, 2015.[23]   In January, Officer Smith and HPD Chief of Police McClelland answered, and Officers Medina and Martinez filed a joint motion to dismiss.[24]   Sergeants Ford and Seals followed suit in early February by filing their joint motion to dismiss.[25]   Plaintiff filed responses to the motions later in February.[26]

Plaintiff sought and received additional time to serve process

---

[21]    Id. p. 7.

[22]    Id. pp. 9-11.   In one sentence of his complaint, Plaintiff also refers to his Sixth Amendment rights, but the complaint is devoid of any facts regarding a trial.   See id. p. 8.

[23]    See Doc. 4, Def. City of Houston's Answer.

[24]    See Doc. 8, Defs. Medina & Martinez' Mot. to Dismiss

[25]    See Doc. 13, Defs. Ford & Seals' Mot. to Dismiss.

[26]    See Doc. 16, Pl.'s Resp. to Defs. Medina & Martinez' Mot. to Dismiss; Doc. 17, Pl.'s Resp. to Defs. Ford & Seals' Mot. to Dismiss.

on Officer Glover.[27]   After the case was referred, the parties consented to proceed before the undersigned.[28]   The case was transferred on February 25, 2016.[29]   Officer Glover appeared and filed an answer on March 16, 2016.[30]   Officer Glover then also consented in writing to proceed before the undersigned.[31]

## II.  Dismissal Standard

Rule 12(b)(6) allows dismissal of an action whenever the complaint, on its face, fails to state a claim upon which relief can be granted.  When considering a motion to dismiss, the court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts.  Harold H. Huggins Realty, Inc. v. FNC, Inc., 634 F.3d 787, 803 n.44 (5th Cir. 2011)(quoting True v. Robles, 571 F.3d 412, 417 (5th Cir. 2009)).

A complaint need not contain "detailed factual allegations" but must include sufficient facts to indicate the plausibility of the claims asserted, raising the "right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Plausibility means that the factual content "allows the court to

---

[27]   See Doc. 14, Pl.'s Mot. for Extension of Time to Serve Process on Def. Glover; Doc. 23, Order Dated May 12, 2016.

[28]   See Doc. 18, Defs.' Consent; Doc. 19, Pl.'s Consent.

[29]   See Doc. 21, Order Transferring Case.

[30]   See Doc. 22, Def. Glover's Answer.

[31]   See Doc. 24, Consent Dated May 17, 2016.

6

draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. 678.   A plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." <u>Twombly</u>, 550 U.S. at 555.   In other words, the factual allegations must allow for an inference of "more than a sheer possibility that a defendant has acted unlawfully." <u>Iqbal</u>, 556 U.S. 678.

### III. Analysis

The two joint motions assert that Plaintiff failed to allege facts identifying specific illegal conduct by any of the four movants and that the movants are all entitled to qualified immunity.   Plaintiff contends that his complaint alleged facts against each of the movants sufficient to support his constitutional claims that the body-cavity search performed at the hospital was an illegal search and was excessive to the need.

### A. <u>Applicable Law</u>

A plaintiff can establish a prima facie case under Section 1983[32] for the deprivation of civil rights by establishing: (1) a violation of a federal constitutional or statutory right; and (2)

---

[32]      The provision reads, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

7

that the violation was committed by an individual acting under the color of state law.  Doe v. Rains Cty. Indep. Sch. Dist., 66 F.3d 1402, 1406 (5th Cir. 1995).  The statute creates no substantive rights but only provides remedies for deprivations of rights created under federal law.  Graham v. Connor, 490 U.S. 386, 393-94 (1989).

Government officials have qualified immunity from Section 1983 "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Pearson v. Callahan, 555 U.S. 223, 231 (2009)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); McCreary v. Richardson, 738 F.3d 651, 655 (5th Cir. 2013 )(citing Harlow, 457 U.S. at 818).  By invoking qualified immunity in good faith, a defendant shifts the burden to the plaintiff to demonstrate its inapplicability.  McCreary, 738 F.3d at 655.

Upon the assertion of qualified immunity in a motion to dismiss, a court considers whether the facts alleged support a finding that the officer's conduct violated a constitutional right and whether that right was clearly established law at the time of the violation.  McCreary, 738 F.3d at 656.  The two prongs may be considered in any order.  Id.

A common starting point for both the movants' failure-to-state-a-claim arguments and their qualified-immunity arguments is

to determine whether Plaintiff's allegations against each officer individually stated a violation of Plaintiff's constitutional rights.  The court accepts the allegations as true and looks for specific facts as to each of the movants that support a claim against that movant.  Cf. Cole v. Carson, 802 F.3d 752, 763 (5th Cir. 2015)(quoting Baker v. Putnal 75 F.3d 190, 195 (5th Cir. 1996))(explaining that the heightened burden in response to the defense of qualified immunity requires pleading "specific conduct and actions giving rise to a constitutional violation").

**B.  Plaintiff's Allegations Against Movants**

The only facts alleged against Officer Medina that implicate constitutional limits on body-cavity searches are his participation in the drafting, presenting for review and signature, and delivering the search warrant to the doctor who performed the search.  His prior surveillance of Plaintiff is not relevant to the constitutionality of the body-cavity search.  The statement in the pleading about procuring the warrant named Officer Martinez as well as Officer Medina.  That is the only factual allegation concerning Officer Martinez' conduct.

Plaintiff made only two factual statements about Sergeant Seals' conduct.  Plaintiff alleged, that, after both Officer Smith and a jail officer performed searches at the jail, "Jail Sergeant Ford and Sergeant Seales [sic] were notified that the Jailor felt

9

something between Plaintiff's butt cheeks as well."[33]   After explaining the request for a strip search, "Officer Smith then asked Sergeant Ford and Sergeant Seales [sic] for a strip search of Plaintiff and stated that the strip search was authorized by G.O.'s [general orders]."[34]   In other words, Officer Smith apprised Sergeant Seals of the results of his search and asked her to authorize a strip search.   The complaint contained no facts indicating that she took any action at all.

Sergeant Ford played a bigger role according to the complaint. The factual allegations regarding Sergeant Ford's conduct are that the jail officer relayed Officer Smith's strip-search request to Sergeant Ford after which the jail officer searched Plaintiff. Sergeant Ford was notified that the jail officer also felt something between Plaintiff's buttocks.   The complaint continued:

> 18.   Jail Sergeant Ford asked Officer Smith why Officer Smith felt that Plaintiff was hiding contraband. . . .

> 19.   Officer Smith then asked Sergeant Ford and Sergeant Seales [sic] for a strip search of Plaintiff and stated that the strip search was authorized by G.O.'s. Sergeant Ford immediately contacted his Lieutenant and had a conversation with his Lieutenant.

> 20.   Sergeant Ford then informed Officer Smith that a strip search WOULD NOT be performed and that Officer Smith needed to see if Plaintiff would remove the object himself or Officer Smith must convince Plaintiff into removing the object himself.   Plaintiff was asked to

---

[33]   Doc. 1, Pl.'s Compl. p. 6.

[34]   <u>Id.</u>

10

remove the object and Plaintiff argued that there was no object to remove.  Sergeant Ford then advised Officer Smith that he was required to transport Plaintiff to a hospital to have a body cavity search performed.

21.  Officer Smith then informed Sergeant Ford that he [Officer Smith] was not requesting a cavity search and was only requesting a strip search.  Sergeant Ford again[] declined to perform a strip search or to have it performed at the jail.[35]

## C.  Constitutional Claims

Plaintiff's complaint challenged the body-cavity search as an unreasonable search and a use of excessive force.  The Fourth Amendment,[36] applied to state actors through the Fourteenth Amendment, protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  The Fourth Amendment encompasses both constitutional protections that Plaintiff alleged to have been violated.

For searches, reasonableness depends on the balance "of the need for the particular search against the invasion of personal rights that the search entails."  Jimenez v. Wood Cty., 660 F.3d 841, 853 (5th Cir. 2011)(quoting Bell v. Wolfish, 441 U.S. 520, 559

---

[35]   Id.

[36]   The full text of the Fourth Amendment is:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

(1979)).  The court considers four factors: "(1) the scope of the intrusion; (2) the manner in which the search is conducted; (3) the justification for initiating the search; and (4) the place in which the search is conducted."  <u>Id.</u> (citing <u>Bell</u>, 441 U.S. at 559).

In general, police are required to secure a warrant before proceeding with a search.  <u>Maryland v. Dyson</u>, 527 U.S. 465, 466 (1999).  Warrants must be issued only "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  An officer, acting pursuant to a warrant, violates the Fourth Amendment's prohibition against unreasonable searches when he makes "a false statement knowingly and intentionally, or with reckless disregard for the truth," which causes the issuance of a warrant without probable cause.  <u>Michalik v. Hermann</u>, 422 F.3d 252, 258 n.5 (5th Cir. 2005)(quoting <u>Franks v. Delaware</u>, 438 U.S. 154, 155-56 (1978)).

Absent in the pleading here is any challenge to the validity of the search warrant or to the veracity of the supporting affirmations.  Moreover, Plaintiff did not allege that the doctor exceeded the parameters of the search warrant.  In fact, despite acknowledging that Officers Medina and Martinez applied for and were granted a search warrant, Plaintiff's pleading and briefing

ignore the effect of that search warrant.[37]  The search warrant cannot be ignored in favor of this court deciding probable cause anew based on the facts presented by Plaintiff.

Plaintiff fails to state a constitutional claim for unreasonable search against any of the movants.

The constitutionality of the force used by state actors is also a matter of reasonableness, requiring that the complainant allege: (1) an injury; (2) that resulted directly from the use of force that was excessive; and (3) the force used was unreasonable. Carnaby v. City of Houston, 636 F.3d 183, 187 (5th Cir. 2011)(citing Freeman v. Gore, 483 F.3d 404, 416 (5th Cir. 2007)).  Reasonableness swings in the balance of the degree of intrusion on the individual's constitutional and the importance to the government of apprehending the individual.  Graham, 490 U.S. at 396.

Absent in the complaint is the allegation that any of the movants personally came into physical contact with Plaintiff. Plaintiff's only allegation of excessive force concerned the body-cavity search itself.[38]  The claim is wholly based on the allegation that the scope of the search was unreasonable.[39]  The body-cavity

---

[37]    The factual recitation by Plaintiff makes perfectly clear that the search would not have occurred but for the procurement and presentation of a warrant.

[38]    See Doc. 1, Pl.'s Compl. p. 8 ("Not only was the search and seizure unwarranted and not allowed by law, but the cavity search was use of excessive force.").

[39]    See id.  As noted above, one of the balancing factors in deciding reasonableness of a search is the invasion of personal rights, e.g., freedom from unreasonable force, as a result of the search.

search was performed at a hospital by a doctor pursuant to a search warrant.   Plaintiff does not allege that the doctor performed the search in a manner that was inappropriate or excessive to the need.

Plaintiff alleged that he remained in handcuffs during the search but specified no resulting injury.  Neither his pleading nor his motion briefing offer facts or analysis suggesting that handcuffing him during the search was unreasonable.

Plaintiff fails to state a constitutional claim for excessive force against any of the movants.

In his response briefs, Plaintiff argues for the first time that movants are also liable under a theory of bystander liability.[40]  Bystander liability is a theory on which liability may be imputed to an officer who knows that another officer is violating an individual's constitutional rights but, despite having a reasonable opportunity to prevent that harm, does nothing. Whitley v. Hanna, 726 F.3d 631, 646 (5th Cir. 2013)(quoting Randall v. Prince George's Cty., 302 F.3d 188, 204 (4th Cir. 2002)).

The constitutional harm alleged by Plaintiff here arose solely out of the performance of a body-cavity search, which was conducted pursuant to a warrant.  Movants cannot be held liable under the theory of bystander liability when the allegations do not support a finding that anyone violated Plaintiff's constitutional rights.

---

[40]    See Doc. 16, Pl.'s Resp. to Officers Medina & Martinez' Mot. to Dismiss pp. 10-14; Doc. 17, Pl.'s Resp. to Sergeants Ford & Seals' Mot. to Dismiss pp. 11-15.

14

Plaintiff fails to state a constitutional claim for bystander liability against any of the movants.

## IV.  Conclusion

Based on the foregoing, the court **GRANTS** Officers Medina and Martinez' Motion to Dismiss and Sergeants Ford and Seals' Motion to Dismiss.

**SIGNED** in Houston, Texas, this 27<u>th</u>  day of May, 2016.

_____
U.S. MAGISTRATE JUDGE

15