IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

STEVEN CHARLOT, §
 §
 Plaintiff, §
 §
v. § CIVIL ACTION NO. H-15-3028
 §
CITY OF HOUSTON, et al., §
 §
 Defendants. §

**MEMORANDUM OPINION**

Pending before the court[1] is Defendants' Amended Motion for Summary Judgment (Doc. 45).[2] The court has considered the motion, Plaintiff's response, all other relevant filings, and the applicable law. For the reasons set forth below, the court **GRANTS** the motion.

**I. Case Background**

Plaintiff filed this civil-rights action against multiple defendants, alleging violations of his constitutional rights in connection with a body-cavity search performed while he was in custody.

**A. Factual Background**

On April 20, 2015, Frank Medina ("Officer Medina") of the

---

[1] The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. See Docs. 18, 19, 21, 24.

[2] Also pending is Defendants' Motion for Summary Judgment (Doc. 43), which was supplanted in its entirety by their filing of the pending amended motion for summary judgment. Defendants' Motion for Summary Judgment is **DENIED AS MOOT**.

Houston Police Department ("HPD") Narcotics Division received information that an individual matching Plaintiff's description was selling cocaine from a gray Lexus at a Houston gas station.[3] During surveillance at the location:

> Officer Medina observed a white female to enter the front passenger seat of the suspect['s] vehicle [and] observed them to perform what appeared to be a drug transaction inside of the male's vehicle. The female then exited the Lexus and returned to her own vehicle after only a minute or perhaps two inside of the suspect vehicle and then left the scene.
>
> Within a few minutes the male moved his vehicle to a gas pump. . . . After a couple of minutes Officer Medina observed a vehicle park next to the male. Officer Medina observed a black female exit the vehicle and enter the male's vehicle [and] again observed what appeared to be a drug transaction inside of the male's vehicle. The female immediately exited the male's vehicle and left the scene.[4]

After following the suspect to another location and back toward the gas station, Officer Medina "advised the assisting marked units of several traffic violations committed by the male."[5]

Defendants Leonard Smith ("Officer Smith") and Michael Glover ("Officer Glover"), HPD officers, stopped Plaintiff pursuant to Officer Medina's report of Plaintiff's traffic infractions.[6] Plaintiff consented to a search of his vehicle that produced a

---

[3] See Doc. 46-1, Ex. C-5 to Pl.'s Resp. to Defs.' Am. Mot. for Summ. J., Aff. for Search Warrant p. 1.

[4] Id. p. 2.

[5] Id.

[6] See id.; Doc. 46-1, Ex. C-1 to Pl.'s Resp. to Defs.' Am. Mot. for Summ. J., Police Report p. 1.

2

hydrocodone bottle labeled with Plaintiff's name and an unreadable year that appeared to be 2010 and another pill bottle for generic Soma in someone else's name.[7]  Although Plaintiff claimed that the pills were his and that he apparently put them in his uncle's pill bottle, he could provide neither the name of his uncle nor the name on the pill bottle.[8]

The officers called for a K9 unit, and the dog alerted to the front console area.[9]  This led to Plaintiff's assertion that the car was not his, but he was unable to identify the person in whose name the car was registered.[10]  Officers Smith and Glover arrested Plaintiff on the charge of possession of controlled substances.[11] A pat-down search of Plaintiff's person performed at the scene produced no illegal narcotics.[12]

After transport to HPD's central jail facility, Officer Smith performed a more thorough search of Plaintiff pursuant to the arrest based on information that Plaintiff may have been concealing

---

[7]     Doc. 46-1, Ex. C-1 to Pl.'s Resp. to Defs.' Am. Mot. for Summ. J., Police Report p. 1; Doc. 46-1, Ex. C-5 to Pl.'s Resp. to Defs.' Am. Mot. for Summ. J., Aff. for Search Warrant p. 2.

[8]     See Doc. 46-1, Ex. C-5 to Pl.'s Resp. to Defs.' Am. Mot. for Summ. J., Aff. for Search Warrant p. 2.

[9]     See id.

[10]    See id.

[11]    See id.; Doc. 46-1, Ex. C-1 to Pl.'s Resp. to Defs.' Am. Mot. for Summ. J., Police Report p. 1.

[12]    See Doc. 46-1, Ex. C-1 to Pl.'s Resp. to Defs.' Am. Mot. for Summ. J., Police Report p. 1.

crack cocaine on his person.[13] The search of Plaintiff's pockets, shoes, socks, waistband, and midsection revealed no narcotics.[14] Officer Smith discovered two cell phones, a wallet, and nearly $800 in currency and felt a "hard semicircular object concealed between [Plaintiff's] butt cheeks."[15]

As Officer Smith believed that Plaintiff was concealing "anywhere from a half of a cookie to one and a half cookies in his underwear and clenched between his butt cheeks," Officer Smith requested that a strip search be performed.[16] Before Officer Smith received an answer regarding his request, jail personnel conducted another quick search of Plaintiff and reported feeling a hard object concealed in Plaintiff's buttocks area.[17]

Curtis Ford ("Sergeant Ford") inquired about the request for a strip search, and Officer Smith explained the situation, the results of his and the jail personnel's searches, and Officer Smith's opinion of concealment based on experience.[18] Officer Smith

---

[13] See id.

[14] See id.

[15] Id.; Doc. 46-1, Ex. C-5 to Pl.'s Resp. to Defs.' Am. Mot. for Summ. J., Aff. for Search Warrant p. 2.
  The police report is typed in uppercase. See Doc. 46-1, Ex. C-1 to Pl.'s Resp. to Defs.' Am. Mot. for Summ. J., Police Report. For the sake of readability, the court chooses to quote it according to the customary rules of uppercase and lowercase usage.

[16] Id. p. 1.

[17] See id.; Doc. 46-1, Ex. C-5 to Pl.'s Resp. to Defs.' Am. Mot. for Summ. J., Aff. for Search Warrant p. 2.

[18] See Doc. 46-1, Ex. C-1 to Pl.'s Resp. to Defs.' Am. Mot. for Summ. J., Police Report pp. 1-2.

4

also opined that HPD general orders authorized a strip search under the circumstances.[19] Sergeant Ford contacted the supervising lieutenant and informed Officer Smith that the request for a strip search was denied.[20] The sergeant told Officer Smith that "the only way to determine if [Plaintiff] had anything concealed was if he consensually removed the object or if [the officers] could convince him to remove it."[21] Plaintiff denied that he had anything hidden between his butt cheeks, denied consent for the officers to attempt to remove the item, and refused to remove the item himself.[22]

Sergeant Ford later instructed Officer Smith to transport [Plaintiff] to a hospital for a body cavity search.[23] Officers Smith and Glover followed Sergeant Ford's instructions and transported Plaintiff to Hermann Hospital, where staff refused to perform a body cavity search, regardless of whether the officers produced a warrant.[24] They then transported Plaintiff to Ben Taub Hospital, where staff indicated that they would perform the search upon presentation of a warrant.[25]

---

[19] See id. p. 2.

[20] See id.

[21] Id.

[22] Doc. 46-1, Ex. C-5 to Pl.'s Resp. to Defs.' Am. Mot. for Summ. J., Aff. for Search Warrant p. 2.

[23] See Doc. 46-1, Ex. C-1 to Pl.'s Resp. to Defs.' Am. Mot. for Summ. J., Police Report p. 2.

[24] See id.

[25] See id.

5

At that time, Officer Medina was in the process of obtaining a warrant for the search.[26] In his affidavit, Officer Medina recounted the facts stated above and requested a warrant to search Plaintiff's anal cavity.[27] The county magistrate signed the warrant.[28]

In the meantime, Officer Smith shared with the doctor the officers' concern that Plaintiff "had concealed illegal narcotics in his buttocks area and possibly now had secreted [them] inside his anus."[29] After the doctor was provided with the warrant, she performed a rectal examination on Plaintiff and found nothing concealed inside his rectum.[30] Officer Smith reported that he believed Plaintiff was able to discard the narcotics at some point when he was outside of the officers' presence inside the jail.[31]

According to Plaintiff, "[t]he whole incident (search process) took about three hours or so."[32] Plaintiff pled guilty to the charge of possession of a controlled substance and stated in his

---

[26] See id.

[27] See Doc. 46-1, Ex. C-5 to Pl.'s Resp. to Defs.' Am. Mot. for Summ. J., Aff. for Search Warrant.

[28] See Doc. 46-1 Ex. C-5 to Pl.'s Resp. to Defs.' Am. Mot. for Summ. J., Search Warrant.

[29] See Doc. 46-1, Ex. C-1 to Pl.'s Resp. to Defs.' Am. Mot. for Summ. J., Police Report p. 2.

[30] See id.

[31] See id.

[32] Doc. 46-1, Ex. D to Pl.'s Resp. to Defs.' Am. Mot. for Summ. J., Pl.'s Aff. p. 2.

affidavit that he did so "because of the fact that I was tired of fighting the case and they said that they would give me time-served."[33]

**B. Procedural Background**

On October 14, 2015, Plaintiff filed this action, naming as defendants the City of Houston, Charles A. McClelland, Jr., ("Former Chief McClelland"), Sergeant Ford, Traci Seals ("Sergeant Seals"), Officer Medina, Eduardo Martinez ("Officer Martinez"), Officer Smith, Officer Glover, and two unnamed officers.[34] Stating two causes of action, Plaintiff alleged that the police officers violated Plaintiff's "right to be secure in [his] person against unreasonable seizure of his person, in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States" and that Former Chief McClelland and Defendant City of Houston were liable for those violations because they were aware of a pattern of excessive force among HPD officers and failed to "instruct, supervise, control, and discipline" the officers.[35]

After the case was referred, the parties consented to proceed

---

[33] Id. p. 1.

[34] See Doc. 1, Pl.'s Orig. Compl. pp. 1, 3. Plaintiff never identified the two unnamed officers.

[35] Id. pp. 9, 11; see also id. pp. 8-12. In one sentence of his complaint, Plaintiff also refers to his Sixth Amendment rights, but the complaint is devoid of any facts regarding a trial. See id. p. 8.

7

before the undersigned.[36] The case was transferred on February 25, 2016.[37] On May 27, 2016, the court entered a memorandum opinion dismissing all claims against Sergeants Ford and Seals and Officers Medina and Martinez.[38] On November 7, 2017, Plaintiff filed an amended complaint without leave of court, attempting to reassert claims against the dismissed parties.[39] Within a short time, Defendants filed a motion to dismiss the amended complaint.[40]

Before the court ruled on their motion to dismiss, Defendants filed a motion and an amended motion for summary judgment that addressed the claims alleged against all of the defendants, including the four previously dismissed.[41] On June 12, 2017, the court struck the improperly filed amended complaint, rendering Defendants' motion to dismiss the amended complaint moot.[42]

To be clear, the only remaining claims in this lawsuit are the Fourth Amendment claims against City of Houston, Former Chief McClelland, Officer Smith, and Officer Glover. The court now

---

[36] See Doc. 18, City of Houston, Former Chief McClellan, Sergeants Ford & Seals, & Officers Medina, Martinez, & Smith's Consent; Doc. 19, Pl.'s Consent.

[37] See Doc. 21, Order Transferring Case. Officer Glover had not been served at the time but later consented in writing to proceed before the undersigned. See Doc. 24, Officer Glover's Consent.

[38] See Doc. 25, Mem. Op. Dated May 27, 2016.

[39] See Doc. 37, 1st Am. Compl.

[40] See Doc. 38, Defs.' Mot. to Dismiss 1st Am. Compl.

[41] See Doc. 43, Defs.' Mot. for Summ. J.; Doc. 45, Defs.' Am. Mot. for Summ. J.

[42] See Doc. 49, Ord. Dated June 12, 2017.

addresses the amended motion for summary judgment.

## II.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Stauffer v. Gearhart, 741 F.3d 574, 581 (5th Cir. 2014). A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001). To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party. See Royal v. CCC & R Tres Arboles, L.L.C., 736 F.3d 396, 400 (5th Cir. 2013)(quoting Anderson, 477 U.S. at 248).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992). The movant may meet this burden by demonstrating an absence of evidence in support of one or more elements of the case for which the nonmovant bears the burden of proof. See Celotex

Corp., 477 U.S. at 322; Exxon Corp. v. Oxxford Clothes, Inc., 109 F.3d 1070, 1074 (5th Cir. 1997).

If the movant carries its burden, the nonmovant may not rest on the allegations or denials in the pleading but must respond with evidence showing a genuine factual dispute. Stauffer, 741 F.3d at 581 (citing Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)). Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden. Brown v. City of Houston, Tex., 337 F.3d 539, 541 (5th Cir. 2003).

### III. Analysis

Defendants argue that Plaintiff fails to establish that the body cavity search was unconstitutional as an unlawful search or as an excessive use of force, fails to overcome Defendants' defense of qualified immunity, fails to demonstrate bystander liability, and, with regard to the claims against City of Houston and Former Chief McClelland, fails to demonstrate a custom or policy that caused a constitutional violation. Plaintiff disagrees with Defendants on the merits of the case, but both parties agree that the Fourth Amendment encompasses the constitutional protections against unreasonable searches and excessive uses of force allegedly violated by the body-cavity search.

A.  **Applicable Legal Standards**

In order to prevail on a claim under 42 U.S.C. § ("Section")

1983,[43] a plaintiff must establish that the defendant deprived the plaintiff of his constitutional rights while acting under the color of state law. Moody v. Farrell, 868 F.3d 348, 351 (5th Cir. 2017). The statute creates no substantive rights but only provides remedies for deprivations of rights created under federal law. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

Government officials have qualified immunity from Section 1983 "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In order to overcome an assertion of qualified immunity, a plaintiff must produce evidence that the alleged conduct violated a statutory or constitutional right and that the right was clearly established at the time of the challenged conduct. See Morgan v. Swanson, 659 F.3d 359, 371 (5th Cir. 2011).

A city may be held liable under Section 1983 only for its own illegal acts, not pursuant to a theory of vicarious liability. Connick v. Thompson, 563 U.S. 51, 60 (2011). To succeed on a claim

---

[43] The provision reads, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

under Section 1983, the plaintiff must demonstrate that an "action pursuant to official municipal policy caused their injury." Id. at 61 (internal quotation mark omitted)(citing Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 691 (1978)). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Id. (citing Monell, 436 U.S. at 691, et al.).

Plaintiff's claims all arise pursuant to the protections of the Fourth Amendment. The Fourth Amendment,[44] applied to state actors through the Fourteenth Amendment, protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

For searches, reasonableness depends on the balance "of the need for the particular search against the invasion of personal rights that the search entails." Jimenez v. Wood Cty., 660 F.3d 841, 853 (5th Cir. 2011)(quoting Bell v. Wolfish, 441 U.S. 520, 559 (1979)). The court considers four factors: "(1) the scope of the intrusion; (2) the manner in which the search is conducted; (3) the

---

[44] The full text of the Fourth Amendment is:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

justification for initiating the search; and (4) the place in which the search is conducted." Id. (citing Bell, 441 U.S. at 559).

In general, police are required to secure a warrant before proceeding with a search. Maryland v. Dyson, 527 U.S. 465, 466 (1999)(citing California v. Carney, 471 U.S. 386, 390-91 (1985). Warrants must be issued only "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. An officer, acting pursuant to a warrant, violates the Fourth Amendment's prohibition against unreasonable searches when he "makes a false statement knowingly and intentionally, or with reckless disregard for the truth," which causes the issuance of a warrant without probable cause. Michalik v. Hermann, 422 F.3d 252, 258 n.5 (5th Cir. 2005)(quoting Franks v. Delaware, 438 U.S. 154, 155-56 (1978)).

For the use of force, the constitutionality of the force used by state actors is also a matter of reasonableness, requiring that the complainant allege: (1) an injury; (2) that resulted directly from the use of force that was excessive; and (3) the force used was unreasonable. Carnaby v. City of Houston, 636 F.3d 183, 187 (5th Cir. 2011)(citing Freeman v. Gore, 483 F.3d 404, 416 (5th Cir. 2007)). Reasonableness swings in the balance of the degree of intrusion on the individual's constitutional rights and the importance to the government of apprehending the individual.

Graham, 490 U.S. at 396.

**B. <u>Discussion</u>**

The court previously found, in addressing the motions to dismiss filed by Officers Medina and Martinez and Sergeants Ford and Seals, that Plaintiff's pleading failed to challenge the validity of the search warrant or the veracity of the supporting affirmations.[45] The court also found that Plaintiff did not allege that the doctor exceeded the parameters of the search warrant.[46] The court further determined that Plaintiff's claim of excessive force was wholly based on the allegation that the scope of the search was unreasonable, not on any physical contact exerted on Plaintiff by the HPD officers or the doctor performing the cavity search.[47]

The time for allegations has ended. At this stage of litigation, Plaintiff must produce evidence of a constitutional violation, as that is the core requirement for establishing a prima facie case under Section 1983, for overcoming qualified immunity, and for imputing liability to the city.[48] Citing to his complaint,

---

[45] See Doc. 25, Mem. Op. Dated May 27, 2016 p. 12.

[46] Id.

[47] Id. p. 13.

[48] Plaintiff's claims against Former Chief McClelland do not assert that he was personally involved in the incident giving rise to this lawsuit but that he was a policymaker who was aware of a pattern of illegal conduct which he failed to correct through training, supervising, and disciplining the officer defendants. See Doc. 1, Pl.'s Compl. p. 3. In a Section 1983 suit against a government actor in his official capacity, the plaintiff is seeking to recover compensatory damages from the government body itself, and the suit should be

Plaintiff argues that the cavity search was unconstitutional because the warrant on which it was based "was procured in and through the misleading statements that an [o]fficer made and/or misleading evidence given to the [m]agistrate who issued the warrant" and "because there was a lesser intrusive means available . . . to retrieve the alleged contraband."[49]

Plaintiff identifies the correct legal issue regarding his claim that the cavity search was unreasonable. Because the search was supported by a warrant, the only way that Plaintiff can survive summary judgment is to produce evidence that Officer Medina "made a false statement knowingly and intentionally, or with reckless disregard for the truth" in his affidavit to procure the warrant, which resulted in a warrant issuing without probable cause. See Michalik, 422 F.3d at 258 n.5.

The evidence implicates only Officer Medina on this issue, as neither of the two remaining individual officers made representations to the magistrate in support of the warrant. Therefore, summary judgment should be granted to Officers Smith and Glover on the illegal search claim.

As evidence of Officer Medina's untruthfulness, Plaintiff states that Officer Medina's affidavit was erroneous because he was

---

treated as one against the government. See Hafer v. Melo, 502 U.S. 21, 25 (1991); Goodman v. Harris Cty., 571 F.3d 388, 395 (5th Cir. 2009)

[49] Doc. 47, Pl.'s Resp. to Defs.' Am. Mot. for Summ. J. pp. 7, 8 (unnumbered).

aware of Officer Smith's opinions and "wrote an erroneous affidavit which led the [m]agistrate into believing that [Officer] Smith found the contraband and could not remove the contraband because Plaintiff refused to allow police personnel[] or Smith to remove it so that a warrant would be needed for removal of contraband that was already found."[50] Plaintiff speculates that the magistrate judge would have denied the warrant if he had known that only pat-down searches, not a visual strip search, had been performed.[51]

These arguments are revisionist history not supported by the evidence. In the first place, Officer Smith's opinion of what search was appropriate is irrelevant to the determination whether Officer Medina made any false statements in his affidavit. Moreover, the evidence shows that Officer Medina recounted facts in his affidavit that were consistent with both Officer Smith's report and his deposition testimony. Officer Medina stated that officers felt something protruding between Plaintiff's butt cheeks and suspected that Plaintiff was "hiding contraband inside his person in an attempt to conceal from law enforcement."[52] That is precisely what Officer Smith reported that he told the doctor while waiting for the warrant: "I spoke with [the doctor] and explained to her our concern that [Plaintiff] had concealed illegal narcotics in his

---

[50] Id. p. 11 (unnumbered); see also id. p. 10.

[51] See id. p. 11.

[52] Doc. 46-1, Ex. C-5 to Pl.'s Resp. to Defs.' Am. Mot. for Summ. J., Aff. for Search Warrant p. 2.

buttocks area and possibly now had secreted it inside his anus."[53]

Officer Medina's affidavit includes no statement that a strip search had been performed; nor does the account of events in the affidavit suggest that one had been performed. No reasonable jury could infer from the affidavit that the magistrate made the unsupported assumption that a strip search had been performed or based the issuance of the warrant on that assumption. Regardless, Officer Medina clearly did not falsely represent that a strip search had been performed. His affidavit accurately recounted the facts, described the place to be searched, and what was to be seized; and the magistrate found probable cause. Because the search was supported by a valid warrant, the scope, the manner, the justification, and the place of the body cavity search were reasonable as a matter of law.

Plaintiff's excessive-force argument is based on his opinion that a less intrusive means was available; however, that is not the proper focus for the claim, particularly in light of the valid warrant. The evidence Plaintiff cites in support of that assertion is based on Officer Smith's testimony that he felt an object protruding from Plaintiff's butt cheeks and requested only a strip search in the belief that a cavity search was not necessary.[54]

---

[53] Doc. 46-1, Ex. C-1 to Pl.'s Resp. to Defs.' Am. Mot. for Summ. J., Police Report p. 2.

[54] See Doc. 47, Pl.'s Resp. to Defs.' Am. Mot. for Summ. J. pp. 9-10 (unnumbered)(citing Doc. 46, Ex. A to Pl.'s Resp. to Defs.' Mot. for Summ. J., Officer Smith's Video Dep. Disc 1).

Again, Officer Smith's personal opinion of what search was necessary is irrelevant. The cavity search was supported by a warrant finding probable cause. Unless Plaintiff can show that the force used in the performance of the cavity search was excessive to the need, he cannot survive summary judgment on this claim. Plaintiff fails to produce any such evidence. The pleading deficiencies are compounded by the absence of any evidence that the doctor exceeded the parameters of the search warrant, that the doctor used more force than necessary in conducting the cavity search, or that Officers Smith or Glover used excessive force in any physical contact they had with Plaintiff. No evidence, including Plaintiff's own affidavit, suggests that he suffered any injury at all, that the body cavity search was performed with force that was excessive to the need, or that a search supported by a finding of probable cause was unreasonable. Plaintiff has failed to produce any evidence in support of his excessive-force claim.

Plaintiff's Fourth Amendment rights to be free of unreasonable searches and the use of excessive force were not violated as a matter of law. As a showing of a constitutional violation is the bedrock of his Section 1983 claim, Plaintiff's failure to produce evidence establishing either an unreasonable search or unreasonable use of force dooms Plaintiff's claims against all remaining

defendants.[55]

## IV. Conclusion

Based on the foregoing, the court **GRANTS** Defendants' Amended Motion for Summary Judgment.

**SIGNED** in Houston, Texas, this 7th day of December, 2017.

_____
U.S. MAGISTRATE JUDGE

---

[55] Plaintiff's alternative theory of bystander liability likewise fails. An individual cannot be held liable under the theory of bystander liability when the evidence does not support a finding that anyone violated Plaintiff's constitutional rights. See Whitley v. Hanna, 726 F.3d 631, 646 (5th Cir. 2013)(quoting Randall v. Prince George's Cty., 302 F.3d 188, 204 (4th Cir. 2002))(stating that the theory applies to impute liability to an officer who knew that another officer was violating an individual's constitutional rights but did nothing).

19